NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| JACQUELINE SMITH,<br><br>Plaintiff,<br><br>v.<br><br>TOWD POINT MORTGAGE TRUST,<br><br>Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:25-cv-02109-KMW-EAP<br><br>OPINION |

APPEARANCES:

**Jacqueline Smith**
36 Peachfield Lane
Willingboro, NJ 08046

*Pro Se*

**Suzanne Q. Chamberlin, Esq.**
**Ashley R. Newman, Esq.**
HINSHAW & CULBERTSON, LLP
111 Wood Ave. South, Suite 210
Iselin, New Jersey 08830

*Counsel for Defendant*

**WILLIAMS, District Judge:**

This matter comes before the Court on the unopposed Motion to Dismiss (Dkt. No. 20) filed by Defendant Towd Point Mortgage Trust ("Defendant"). The Court, having reviewed the Parties' submissions and considered the papers without oral argument pursuant to Federal Rule of Civil Procedure 78(b), **GRANTS** Defendant's motion and dismisses the Complaint without prejudice and without leave to amend.

### I.   INTRODUCTION

On March 26, 2025, Plaintiff Jacqueline Smith ("Plaintiff") filed a Complaint and initiated an action in this Court. (Compl., Dkt. No. 1.) The Court acknowledges that Plaintiff is proceeding

*pro se*,[1] and accordingly, will summarize the relevant facts underlying the case from what it can glean from the inartfully pled Complaint and other filings Plaintiff has submitted to this Court. The Court notes that some of Plaintiff's submissions include filings from the inter-related foreclosure action in the Superior Court of New Jersey, which is central to Plaintiff's arguments before this Court. Specifically, on March 11, 2025, just over two weeks prior to the initiation of the instant matter, a foreclosure action was filed against Plaintiff in the Superior Court of New Jersey, under Docket No. F-2781-25 (the "Foreclosure Action"). (Dkt. No. 20 at 2.) The legitimacy of those proceedings is what Plaintiff primarily attacks in her Complaint filed in this Court. (Compl., Dkt. No. 1, *see also* Dkt. No. 7.)

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Loan and the Foreclosure Action

On June 24, 2005, Plaintiff executed a Note to Washington Mutual Bank, FA, in the amount of $154,500.00. (Dkt. No. 20-1 at 2.) The Note was secured by a Mortgage in favor of Washington Mutual Bank, FA, also dated June 24, 2005, which mortgaged the premises located at 36 Peachfield Lane, Willingboro, New Jersey. (*Id.*) The Mortgage was recorded in the Burlington County Clerk's Office on July 14, 2005. (*Id.*) The Note and Mortgage together comprise the "Loan." The Mortgage was assigned four times, most recently on January 27, 2022, from First Key Mortgage, LLC to Defendant, and recorded in the Burlington County Clerk's Office on December 5, 2024. (*Id.*) The Loan went into default as of October 1, 2024, prompting the initiation of the Foreclosure Action.

---

[1] Where, as here, a Plaintiff proceeds *pro se,* the Complaint is "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds *pro se.*" *Thakar v. Tan,* 372 F.3d. App'x 325, 328 (3d Cir. 2010) (citation omitted).

Plaintiff proceeded *pro se* in the Foreclosure Action and participated in that litigation, filing what was deemed by the Superior Court to be a "contesting answer" on April 7, 2025. (*Id.* at 3, *see also* Ex. B.) On May 14, 2025, a Case Management Order was entered in the Foreclosure Action, indicating that the parties were to serve discovery demands by May 23, 2025, with discovery responses due June 30, 2025. (*Id.*) On July 18, 2025, the lender in the Foreclosure Action (who is the party associated with Defendant in the instant action) filed a Motion for Summary Judgment, initially returnable August 15, 2025, that was adjourned to August 28, 2025. (*Id.*) In the time since Defendant filed the instant Motion to Dismiss, the Superior Court granted the Motion for Summary Judgment in the Foreclosure Action. (Dkt. No. 23, Ex. C at 40-41.) The order granting Summary Judgment also struck the contesting answer Plaintiff filed in that action and noted that the matter was to proceed "as an uncontested foreclosure before the Office of Foreclosure pursuant to Rule 4:64-1(d)." (*Id.*)

## B.    The Federal Action

On March 26, 2025, after the Foreclosure Action had already commenced, Plaintiff filed her initial Complaint in this matter. (Compl., Dkt. No. 1.) Therein, Plaintiff states the jurisdictional basis is "federal question," while also noting that there is diversity of citizenship.[2] Plaintiff further checked the box on her civil cover sheet indicating that the matter was being removed from State Court.[3] In the Complaint Plaintiff alleges that she is "objecting to the claims against [her] due to

---

[2] Whether or not diversity jurisdiction exits is unclear given the conflicting reports from Plaintiff regarding her citizenship. (*Compare* Dkt. No. 1 (where Plaintiff notes citizenship status in New York) *with* Dkt. No. 5 (where Plaintiff notes citizenship status in New Jersey)). Ultimately that disposition is irrelevant given that the Court, as per the mandate to read *pro se* filings liberally, recognizes that Plaintiff has adequately pled federal causes of action triggering "federal question" jurisdiction, discussed in more detail below.

[3] Despite many such instances of Plaintiff claiming to have removed the matter to Federal Court, she has not. She has initiated a separate, related, suit, seeking to invalidate the Foreclosure Action. Many of Plaintiff's filings give reference to a removal notice (*see*, e.g., Dkt. No. 1 at 7, Civil Cover Sheet to Complaint; Dkt. No. 5 at 1; Dkt. No. 19 at 26) but none satisfy the requirements for removal, even considering the liberal standard with which the Court reviews *pro se* filings. To be sure, Plaintiff was an active participant in the Foreclosure Action, even after she purported to remove

serious concerns regarding the legitimacy of the alleged debt." (*Id.*) Plaintiff further attacks the legitimacy of the Foreclosure Action, stating that "[t]he Defendant has not presented the original Promossory [sic] note, nor have they clarified their legal right to enforce the mortgage." (*Id.*). Plaintiff seeks the following relief in this action:

> (1) Dismissal of the Defendant's Claim, due to the lack of sufficient documentation and standing to enforce the alleged mortgage and note.
>
> (2) An order requiring the Defendant to provide all necessary documentation to verify validity of the alleged debt, including the original Promissory Note and a complete chain of assignments.
>
> (3) Injunctive relief to pause any foreclosure actions or related proceedings until these issues are fully resolved and properly documented.
>
> (4) Should the Court find that the Defendant failed to comply with applicable regulations under 12 U.S. Code section 2605(e) I respectfully request consideration of statutory damages and reimbursement of all funds paid out since the inception of this loan, along with cost [sic] incurred in attempting to resolve these issues (*e.g.*, court fee, notary fees, attorney fees and punitive fees). A free and clear tile, with notation of this alleged loan being noted as "Paid in full" on all credit agencies.
>
> (*Id.*)

After filing the Complaint which initiated this action, Plaintiff filed what was purported to be a certificate of service, but which included a new and wholly unique complaint from the operative Complaint initially filed. (*Compare* Compl., Dkt. No. 1 *with* Compl., Dkt. No. 7.) Following a letter by Defendant seeking clarification, the Court issued a Text Order stating that the complaint included in Plaintiff's purported Certificate of Service was not the operative Complaint and instructs Plaintiff to serve Defendant with her federal Complaint (Dkt. No. 1.) On

---

the action to Federal Court. Such continuation and participation in the state court proceeding renders what the Court interprets as Plaintiff's arguments that Removal was already effected, unreasonable. Moreover, many of the documents filed in this Court, which Plaintiff argues constitute a removal, were filed well after the strict 30-day deadline for such Removals to be proper. *See* 28 U.S.C. § 1446(b)(1).

4

July 1, 2025, the day after the Court's Text Order, Plaintiff requested Clerk's Entry of Default against the Defendant. (Dkt. No. 13.) Plaintiff's request was not granted because she had not yet effectuated service on Defendant. (QC Message entered on July 2, 2025.) Plaintiff filed an Amended Certificate of Service on July 11, 2025, and again requested Clerk's Entry of Default against the Defendant. (Dkt. Nos. 14 & 15.)  This request also could not be granted because Plaintiff had still not properly served Defendant. (QC Message entered on July 16, 2025.) On July 23, 2025, in recognition of Plaintiff's *pro se* status, the Court issued a Text Order with detailed instructions to Plaintiff regarding how to properly serve the Defendant. (Dkt. No. 16.)  To this end, the Court advised Plaintiff that she must "serve Defendant with (1) a fully-completed federal summons that includes the name and address of the Defendant (as opposed to Defendant's counsel) and the signature of the Clerk of Court, in compliance with Fed. R. Civ. P. 4(a)(1); and (2) a copy of her federal Complaint, ECF No. 1." (*Id.*).

Following that instruction Plaintiff made three separate filings purporting to be Affidavits of Service. (Dkt. Nos. 17, 18, 19.) The first of these filings made the same mistake as her previous attempts at service and failed to include the operative federal court Complaint. (Dkt. No. 17.) The second submission included all information required by the Federal Rules of Civil Procedure and the Court's detailed instructions, including the fully-completed federal summons and operative federal Complaint. (Dkt. No. 18). The third such filing appears to be a combination of Plaintiff's submissions at Dkt. Nos. 17 and 18, including both the operative federal Complaint and the erroneous version of the Complaint first submitted at Dkt. No. 7. (Dkt. No. 19.) This submission also includes a document purporting to be a Notice of Removal, which is procedurally and substantively deficient.[4]

---

[4] *See supra* note 3.

On August 22, 2025, Defendant filed the instant Motion to Dismiss. (Dkt. No. 20). Plaintiff has filed several different affidavits all generally arguing some sort of failure related to the Foreclosure Action which harmed her in one way or another. (Dkt. Nos. 21, 23, 24, 25, 27, 28.) Even considering the liberal standard of review Plaintiff is afforded as a *pro se* litigant, nothing Plaintiff filed after Defendant's filing of their Motion to Dismiss can be properly read as an opposition, and thus Defendant's Motion to Dismiss is deemed unopposed. Defendant includes four primary bases in support of its Motion to Dismiss: 1) the *Colorado River* abstention doctrine bars Plaintiff's claims because there is a parallel state court proceeding; 2) the entire controversy doctrine bars Plaintiff's action because Plaintiff's claims are related and should have been brought in the state court proceedings; 3) Plaintiff's federal claims fail as a matter of law because they are untimely; and 4) Plaintiff failed to properly serve Defendant.

## III.    LEGAL STANDARD

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ,*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-180 (1803)).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the pleading and draw all reasonable inferences from those allegations in the light most favorable to the non-movant, *see Phillips v. Cnty. of Allegheny,* 515

6

F.3d 224, 231 (3d. Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). To survive a motion to dismiss, a pleading must therefore contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

## IV.    DISCUSSION

Upon reviewing Plaintiff's Complaint, the Court finds that *Colorado River* abstention doctrine and New Jersey's entire controversy doctrine bar Plaintiff's claims in this Court. Further, to the extent that Plaintiff's RESPA and TILA claims[5] are properly included, the Court finds that the *Colorado River* abstention doctrine and New Jersey's entire controversy doctrine apply to bar those claims as well.

### A.    *Colorado River* Abstention

"The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state proceeding." *Tomasi v. Township of Long Beach,* 364 F.Supp.3d 376, 388 (D.N.J. 2019) (quoting *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton,* 571 F.3d 299, 307 (3d Cir. 2009)). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813 (1976). However, federal courts may abstain from cases or controversies otherwise in its jurisdiction when there are "exceptional circumstances where the order to the

---

[5] The operative complaint in this matter (Dkt. No. 1) does not include reference to Plaintiff's RESPA or TILA claims, however, her subsequently and improperly filed complaint (Dkt. No. 7) does. The Court has previously ruled that Dkt. No. 1 is the operative complaint in this matter (*see* Dkt. No. 12). However, the Court notes that Defendant has responded to these additional claims in their Motion to Dismiss (Dkt. No. 20) and again acknowledges the liberal standard of review afforded to Plaintiff as a *pro se* litigant and, accordingly, will address these claims for completeness.

parties to repair to the state would clearly serve an important countervailing interest." *Id.* (quoting *Cnty. Of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-89 (1959)).

"Whether abstention is appropriate requires a two-part inquiry: (1) whether there is a parallel state proceeding . . . ; and (2) if so, whether extraordinary circumstances meriting abstention are present." *Tomasi,* 364 F.Supp.3d at 388 (internal citation and quotation marks omitted). "[P]arallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC,* 438 F.3d 298, 306 (3d Cir. 2006) (alteration in original) (quoting *Yang v. Tsui,* 416 F.3d 199, 205 (3d Cir. 2005)). If the proceedings are found to be parallel, courts then apply a multi-factor test to determine whether "extraordinary circumstances" are present such that abstention is warranted. *Tomasi,* 364 F.Supp.3d at 388. The six-factor test consists of:

> (1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Id.* (quoting *Nationwide Mut. Fire. Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 307 (3d. Cir. 2009)). "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Nationwide Mut. Fire. Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 308 (3d Cir. 2009) (quoting *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 818-19 (1976)).

Here, the Foreclosure Action and the instant action are parallel proceedings. Both cases involve essentially the same parties: Plaintiff and Defendant. Additionally, Plaintiff's claims arise out of the same mortgage transaction that is the basis for the state court Foreclosure Action. Both

8

proceedings relate to Defendant's right to foreclose and Plaintiff claims in both actions that the Defendant does not have standing to bring the Foreclosure Action and generally attacks the legitimacy of the debt. A close reading of the relief Plaintiff seeks is further indicative of the parallels between the instant action and the Foreclosure Action. Specifically, plaintiff seeks: 1) an outright dismissal of the Foreclosure Action; 2) an order requiring Defendant to provide documentation to verify the debt; 3) injunctive relief seeking to pause the Foreclosure Action and any related proceeding; and 4) statutory damages pursuant to 12 U.S.C. § 2605(e) and reimbursement of all funds paid out since the inception of the loan.[6] (Compl., Dkt. No. 1 at 6.) Accordingly, the Foreclosure Action and the instant action both relate to whether Defendant is entitled to foreclose on the subject property and, thus, are parallel under the *Colorado River* doctrine.

The Court finds that the requisite extraordinary circumstances are present and the Court must abstain from deciding Plaintiff's claims in the instant matter. To begin with, the state court obtained jurisdiction over the subject property first, and "the presence of an in rem dispute in the state court action weighs in favor of abstention." *Chambers v. Wells Fargo Bank, N.A.*, 726 F. App'x 886, 888 (3d Cir. 2018). Regarding the inconvenience of the federal forum, the Foreclosure Action is pending in state court and thus would be inconvenient for the parties to simultaneously

---

[6] Plaintiff's subsequently filed Complaint (Dkt. No. 7) was deemed by this court to not be the operative proceeding in this action, but even a reading of the claims therein supports the conclusion that the Foreclosure Action and the instant action are parallel proceedings. Specifically, in that complaint Plaintiff seeks in large part duplicative relief as in her first filed complaint, including: a declaratory judgement that Defendant lacks standing to bring the Foreclosure Action (Count I), to quiet title on the subject property in favor of Plaintiff by declaring the Note invalid (Count III), and a fraud and misrepresentation claim purportedly against all financial institutions which at any point had an interest in the Mortgage, amounting generally to an attack on the legitimacy of the Note (Count IV). (Compl., Dkt. No. 7). The only other claim that differs from those which were included in her first filing are alleged violations of the Real Estate Settlement Procedure Act (RESPA) and the Truth in Lending Act (TILA) (Count II), but these too arise out of the same mortgage transaction which is the subject of the state court Foreclosure Action. Thus, even consideration of Plaintiff's subsequently filed complaint does not change the conclusion that the Foreclosure Action and the instant action are parallel proceedings.

litigate a second case in this Court. *Gurvey v. M&T Bank, Inc.,* 2020 WL 7396289, at *3 (D.N.J. 2020). Abstention here similarly supports the desire to avoid piecemeal litigation in that the alternative invites the potential for inconsistent results in the instant action as compared to the pending Foreclosure Action which "would create confusion over the parties' rights and obligations regarding the mortgage [and] property." *Chambers,* 726 F. App'x at 889.

As to the fourth factor, the state court obtained jurisdiction first in the Foreclosure Action and that action is still pending. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 21 (1983) (explaining that the order in which jurisdiction was obtained "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). The procedural history of both actions makes clear that the state court obtained jurisdiction first—indeed, the Foreclosure Action has advanced through to summary judgment proceedings, which were granted by the state court on August 28, 2025; while the instant action has barely proceeded past the pleadings. The fifth factor is relatively neutral, given that Plaintiff alleges both common law claims and violation of federal law, thus, both federal and state law apply. Finally, the sixth factor also supports abstention here because the state court is an adequate forum to review Plaintiff's federal and state claims, "given the state court's familiarity with foreclosure actions[.]" *Gurvey,* 2020 WL 7396289, at *3. Accordingly, the Court finds that *Colorado River* abstention doctrine applies and the Court will abstain from hearing Plaintiff's case and dismiss Plaintiff's Complaint without prejudice and without leave to amend.

## B.    Entire Controversy Doctrine

Under New Jersey's "entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently

10

cognizable cause of action."[7] *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). "The doctrine 'is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Mason v. US Bank*, 2016 WL 7189828, at *4 (D.N.J. 2016) (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999)). "This doctrine is codified in the New Jersey Court Rules, which provide that '[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." *Murray v. Crystex Composites, LLC*, 618 F.Supp.2d 352, 357-58 (D.N.J. 2009), *aff'd*, 378 F.App'x 159 (3d Cir. 2010) (quoting N.J. Ct. R. 4:30A).

"[T]he central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995). "[I]f parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation." *Id.* (citing *O'Shea v. Amoco Oil Co.*, F.2d 584 (3d Cir. 1989)). Regarding foreclosure actions, the entire controversy doctrine is limited and bars only "germane" counterclaims as defined by N.J. Ct. R. 4:64-5. *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). A claim is germane where the claim "aris[es] out of the mortgage transaction which is the subject matter of the foreclosure action." *Leisure Tech Northeast Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353,

---

[7] As the Third Circuit has recognized, "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Rycoline Products, Inc. v. C&W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997). "In other words, 'a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* (quoting *Peduto v. City of North Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989)). "[T]he entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 965 (3d Cir. 1991).

358 (App. Div. 1975). "Courts have viewed several types of claims as germane to a New Jersey foreclosure action, including those challenging the circumstances surrounding origination of the loan, challenging the validity of the loan itself, and arising out of the mortgage transaction." *Guaba v. World Savings Bank,* 2014 WL 6870995, at *2 (D.N.J. 2014).

Here, Defendant argues that application of New Jersey's entire controversy doctrine bars all of Plaintiff's claims. (Dkt. No. 20 at 11). The Court agrees. All of Plaintiff's claims are germane to the Foreclosure Action because all of them arise from the same mortgage transaction which is the basis of the state court Foreclosure Action. That conclusion is unavoidable when evaluating the relief Plaintiff seeks – all of which seek to dismiss or invalidate the Foreclosure Action in one way or another. (Dkt. No. 1 at 6). Further, even if this Court were to consider Plaintiff's subsequent and improperly filed complaint (Dkt. No. 7) and the unique federal claims contained therein, application of the entire controversy doctrine to bar Plaintiff's claims is still appropriate. This is because Plaintiff's allegations regarding violations of RESPA and TILA's notice requirements, while raising a federal question that can confer subject matter jurisdiction, "are germane to the foreclosure action, and therefore, barred by the entire controversy doctrine." *Fung. v. Wells Fargo Bank,* 2022 WL 475813, at *6 (D.N.J. 2022), *see also, Puche v. Wells Fargo NA,* 256 F.Supp.3d 540, 549 (D.N.J. 2017) ("Claims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property."); *Howard v. Wells Fargo Bank, NA,* 733 F.Supp.3d 352, 360 (D.N.J. 2024) ("Under [the entire controversy] doctrine, a claim that was "germane" to a foreclosure proceeding cannot be raised in subsequent litigation. This includes a RESPA claim."), *aff'd,* No. 24-2010, 2024 WL 4890984 (3d Cir. Nov. 26, 2024); *Federal National Mortgage Association v. Gissubel,* No. A-3389-16T3, 2018 WL 1513166, at *4 (N.J. Super. Ct. App. Div. Mar. 28, 2018) ("Here, defendant's statutory claims under the FFA,

TILA, and CFA were germane to the foreclosure. ... Therefore, the claims fall within the single controversy doctrine.") (internal citation and quotation marks omitted). Thus, such RESPA and TILA claims cannot be raised in subsequent litigation pursuant to the entire controversy doctrine. Because these claims must be raised, if at all, in the state court Foreclosure Action, they cannot be cured through amendment in this Court, and, accordingly, the Court will grant Defendant's Motion to Dismiss and dismiss Plaintiffs claims without prejudice and without leave to amend.

### C.    Failure to State a Claim

Finally, Defendant's make the additional argument that Plaintiff's RESPA and TILA claims are time barred by the applicable statute of limitations and thus fail to state a claim and must be dismissed[8]. (Dkt. No. 20 at 11-12.) Pursuant to TILA, a claim for monetary damages "has a one-year statute of limitations, which runs from the date of closing of the loan." *Otto v. Wells Fargo Bank, N.A.*, 2016 WL 8677313, at *8 (D.N.J. July 15, 2016), *aff'd* 693 Fed. App'x 161 (3d Cir. 2017) (citing 15 U.S.C. § 1640(e)). The statute also includes an extended three-year statute of limitations, beginning to run on the date of the alleged violation, for violations of section 1639, 1639b, or 1639c; however, Plaintiff alleges no facts implicating 15 U.S.C. §§ 1639, 1639b, or 1639c and thus her claim is properly evaluated under the one year limitations period. 15 U.S.C. § 1640(e). Here, Plaintiff's loan closed on June 24, 2005. (Dkt. No. 20 at 11). As this action was not initiated until nearly 20 years after the loan closed, Plaintiff's TILA claim is time barred.

As to Defendant's argument that Plaintiff's RESPA claim is time barred, the Court disagrees. Similar to TILA, RESPA includes a limitations period in the statute and provides both a one-year and three-year period to bring claims, beginning when the violation occurred. 12 U.S.C.

---

[8] These claims are only contained in Plaintiff's subsequently filed complaint, which the Court has explained is not the operative complaint in this matter. However, given Plaintiff's *pro se* status and the fact that Defendant has raised these arguments in their Motion to Dismiss, the Court will briefly address them.

13

§ 2614, *Glanton v. Master Craftsman Associates,* 2012 WL 3229161, at \*3 (D.N.J. Aug. 6, 2012). Specifically, and relevant here, the statute provides a three-year limitation for alleged violations of section 2605, which is what Plaintiff claims here. *Id.* Plaintiff's RESPA claim is based on her Qualified Written Requests ("QWR") sent in 2024 seeking various disclosures and information about the loan. (Compl., Dkt. 7 at ¶ 17, 5-6). Plaintiff notes that she sent several QWRs, beginning with the first on August 10, 2024, and her last on December 10, 2024. (*Id.; see also* Ex. A.) Under the statute, sending the QWR triggers a duty to acknowledge the QWR within 5 days and to appropriately respond within 30 days. 12 U.S.C. § 2605(e)(1-2). Thus, the earliest the statute of limitations period would run is September 14, 2027—three years after the time to respond to Plaintiff's first QWR. Accordingly, Plaintiff's RESPA claim is not untimely.

Defendant further argues that Plaintiff's RESPA claim must be dismissed because Plaintiff did not send her QWRs to the right address. (Dkt. No. 20 at 12.) Defendants acknowledge that the Third Circuit has not yet ruled on whether an improperly addressed QWR is grounds for the dismissal of a RESPA claim, and instead cite to a litany of cases from other jurisdictions. (*Id.*) The Court need not opine as to whether the improperly addressed QWR can serve as the basis to dismiss a RESPA claim in this circuit because Defendant's argument fails for different, more fundamental reasons. Namely, their argument in this regard begets factual considerations that cannot be resolved on Defendant's Motion to Dismiss. *Hager v. CitiMortgage, Inc.,* 2017 WL 751422, at \*8 (D.N.J. Feb. 27, 2017). Specifically, the code of federal regulation § 1024.36(b) requires that a defendant provide prior written notice to a plaintiff of the defendant's designated address, including a clear statement that the plaintiff was required to use that designated address to request information. *Id.* (citing C.F.R. § 1024.36). No such written notice has been included in anything filed in this matter. At this stage in the proceeding, Defendant has failed to provide any supplementary documents or

14

certifications on this point. Thus, Defendant's argument for dismissal on this ground fails. However, as discussed *supra* IV.B., Plaintiff's RESPA claim is "germane" to the Foreclosure Action and thus must have been included in that state court action pursuant to New Jersey's entire controversy doctrine. Thus, along with all of Plaintiff's other claims, her RESPA claim must be dismissed.

Lastly, Defendant makes one additional and separate argument in support of their Motion to Dismiss: that they were never properly served. The Court acknowledges several hic-ups in the ordinary process of service, given Plaintiff's *pro se* status.[9] However, proper service was eventually achieved following the Court's Text Order providing Plaintiff with detailed instructions on how to effect proper service on Defendant. (*See* Dkt. Nos. 16, 18, 19.) Regardless, the Court need not resolve whether service was properly effected because Plaintiff's claims are already subject to dismissal on independent grounds. Namely, as discussed, the Court finds that all of Plaintiff's claims must be dismissed pursuant to the *Colorado River* abstention doctrine and New Jersey's entire controversy doctrine, as well as the further grounds regarding the time limitation related to Plaintiff's TILA claim.[10]

---

[9] Plaintiff made five separate filings purporting to be either a Certificate of Service or Affidavit of Service (Dkt. Nos. 7, 14, 17, 18, 19), which the Court responded to with corrective guidance, most recently by Text Order on July 23, 2025. (Dkt. No. 16.)

[10] The Court may deny leave to amend where any amendment would be futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (determining that a dismissal without leave to amend is justified where the amendment would be futile); *see also, e.g., Kovalev v. Stepansky*, 835 F.App'x 678, 680 & n.2 (3d Cir. 2020) (modifying district court's order dismissing claims with prejudice for lack of subject matter jurisdiction to a dismissal *without* prejudice and *without* leave to amend). Plaintiff has not made any request to amend the inartful and duplicative Complaint, nor would any possible amendment remedy the deficiencies on which this dismissal is based. This is because Plaintiff's claims here are barred by application of the *Colorado River* abstention doctrine and New Jersey's entire controversy doctrine, and must have been raised, if at all, in the state court Foreclosure Action. Thus, the Court finds that further amendment would be futile and dismisses all of Plaintiff's claims without prejudice and without leave to amend.

## V.    CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 20) is **GRANTED**, and Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** without prejudice and without leave to amend. An Order consistent with this Opinion will be entered.

Dated: 3/31/2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

16